**MID–STATES AG–CHEM COMPANY, INC., Plaintiff,**

v.

**ATCHISON GRAIN COMPANY, INC., Defendant.**

**Civ. A. No. 90–4136–S.**

United States District Court, D. Kansas.

Oct. 26, 1990.

---

Timothy J. Pringle, Ascough, Eschmann, Oyler, P.A., Topeka, Kan., for plaintiff.

Robert J. Bednar, Robert F. Duncan, Duncan, Senecal & Bednar, Atchison, Kan., for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on plaintiff's motion for a preliminary injunction and a prejudgment attachment order pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure. Plaintiff requests equitable relief in the form of an injunction preventing defendant Atchison Grain Company, Inc. ("Atchison Grain") from selling any of its assets prior to final judgment of plaintiff's action against defendant. Specifically, plaintiff seeks to prevent Atchison Grain from selling its liquid and anhydrous fertilizer operation. Plaintiff Mid–States Ag–Chem Company, Inc. ("Mid–States") further seeks an attachment order to prevent Atchison Grain from secreting, moving, disposing of, hypothecating, wasting, dissipating, or transferring any of its assets pending the final judgment and plaintiff's efforts to collect on a final judgment. A hearing was held on October 25, 1990. Given the evidence and the briefs submitted by the parties, the court makes the following findings of fact and conclusions of law.

I.  Preliminary Injunction

A.  *Findings of Fact*

1.  Plaintiff Mid–States is a Minnesota corporation authorized to do business as a foreign corporation in the state of Kansas.

2.  Defendant Atchison Grain purchased farm chemicals from Mid–States and sold these chemicals to the public, pursuant to a security agreement.

3.  On July 24, 1990, plaintiff filed this action invoking this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff alleges that defendant Atchison Grain gave a security interest to Mid–States in all of the defendant's inventory of chemicals, chemical compounds, herbicides, pesticides, insecticides, seeds, fertilizers, compounds, derivatives and implements held for sale in the ordinary course of defendant's business, wherever located and whether now owned or hereafter acquired including proceeds thereof and all accounts receivable arising out of defendant's business, whether existing or hereafter acquired therefrom.

Plaintiff avers that defendant has sold these chemicals but has failed and has refused to pay plaintiff for these chemicals. Plaintiff alleges that defendant is indebted to plaintiff for the sum of $518,256.01.

4.  Defendant has answered plaintiff's complaint by admitting that it is indebted to plaintiff. However, defendant contests the exact amount which is owed. Defendant additionally contests the terms and validity of the alleged security agreement.

5.  Since July, 1990, defendant has proposed to sell some of its assets in an attempt to achieve a one-to-one ratio of assets to liabilities as required by K.S.A. 34–228(c)(1).

6.  Defendant will lose its warehouseman's license if it does not achieve a one-to-one assets-to-liability ratio.

7.  Plaintiff was aware of defendant's proposal to sell some of its assets in an attempt to pay off some of its creditors as early as August 8, 1990.

8.  Plaintiff filed a motion for preliminary injunction and/or a prejudgment attachment order October 17, 1990, 14 days prior to the proposed auction almost three months after the commencement of this lawsuit.

9.  Exchange National Bank and Trust Company of Atchison and the Small Business Administration both have security interests in the property scheduled to be sold.

## B. *Conclusions of Law*

The United States Court of Appeals for the Tenth Circuit set out the traditional standards which govern requests for preliminary injunctions in *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980). To obtain a preliminary injunction, the moving party must show:

(1) a substantial likelihood that he will eventually prevail on the merits;

(2) that he will suffer irreparable injury unless the injunction issues;

(3) that the threatened injury to him outweighs whatever damage the proposed injunction may cause the opposing party; and

(4) that the injunction, if issued, would not be adverse to the public interest.

Rule 52(a) of the Federal Rules of Civil Procedure requires that "in granting or refusing interlocutory injunctions the court shall ... set forth the findings of fact and conclusions of law which constitute the grounds of its action." *Potawatomi Indian Tribe v. Enterprise Management Consul.*, 883 F.2d 886, 889 (10th Cir.1989).

■■■ In this case, plaintiff has failed to satisfy two prongs of the four-prong test enunciated in *Lundgrin.* Initially, plaintiff has stated that it will suffer irreparable harm if the relief requested is not granted because it will not be able to collect on the debt allegedly owed to plaintiff. However, the court finds that monetary damage does not constitute irreparable injury and is an insufficient basis for a preliminary injunction. *See* C. Wright & A. Miller, *Federal Practice and Procedure* § 2948, at 434 (1973). Moreover, plaintiff was aware of defendant's plans to sell certain assets as early as August, 1990, yet plaintiff waited until October 17, 1990 to seek a preliminary injunction. Plaintiff's delay in seeking a preliminary injunction indicates that the damages plaintiff contemplates are not "serious enough to justify a preliminary injunction." *Id. See Kingsford Products*

Co. v. Kingsford, Inc., 674 F.Supp. 1428, 1431 (D.Kan.1987) (delay "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief").

■■■ Further, plaintiff bears the burden of showing that the threatened injury to him outweighs whatever damage the proposed injunction may cause the opposing party. *Lundgrin*, 619 F.2d at 63. Defendant has presented persuasive evidence that if the planned auction is not conducted it will not be able to establish a one-to-one ratio with its asset-liability ratio within the deadline imposed by the Grain Inspection Department of the State of Kansas. As a consequence, defendant will lose its warehouseman's license and will be forced to go out of business. In contrast, plaintiff stands to lose a substantial amount of money, however, plaintiff is not in jeopardy of having to shut down. Thus, clearly plaintiff has failed to demonstrate that its threatened injury outweighs whatever damage the proposed injunction may cause defendant. Having failed to satisfy the "irreparable injury" requirement, and the requirement that plaintiff's threatened injury outweighs damages which the proposed injunction may cause, the court will deny plaintiff's motion for a preliminary injunction.

## II. Prejudgment Attachment Order

■■■ In the alternative, plaintiff seeks an order of prejudgment attachment against defendant pursuant to K.S.A. 60–701 *et seq.*[1] Specifically, plaintiff alleges that defendant intends to "convert his or her property or a part thereof into money for the purpose of placing it beyond the reach of creditors" K.S.A. 60–701(4). Pursuant to K.S.A. 60–704, plaintiff has filed an affidavit in which the affiant states, "Mid–States Ag–Chem Co., Inc. believes that Atchison Grain Co., Inc. intends to dispose of the liquid and anhydrous fertilizer operations, and other personal property, so as to hinder and delay Mid–States Ag–Chem Co.,

---

1. The normal procedure under K.S.A. 60–701 *et seq.,* is for the court to grant an attachment order and then conduct a hearing upon motion of defendant to dissolve the attachment order pursuant to K.S.A. 60–712(a). However, because the court has already conducted a hearing on this matter, the court will rule on the issue of whether defendant's property may be attached properly pursuant to K.S.A. 60–701 *et seq.*

Inc. and other creditors in collecting the monies legally due and owing to them." The court finds this statement to be conclusory and unsupported by the evidence presented at the hearing. Contrary to plaintiff's affidavit, defendant produced evidence which supports the conclusion that defendant did not intend to convert its assets in order to place them beyond the reach of its creditors. Indeed, the opposite conclusion is supported by the evidence. Defendant has corresponded with its creditors regarding the sale, and has corresponded directly with plaintiff.[2] Thus, the court finds that plaintiff's affidavit does not support its allegation that defendant is about to convert his or her property for the purpose of placing it beyond the reach of creditors pursuant to K.S.A. 60–701(4).

Moreover, K.S.A. 60–705 requires plaintiff to post a bond "double the amount of the plaintiff's claim ... to the effect that the plaintiff shall pay to the defendant all damages which the defendant may sustain by reason of the attachment if wrongfully obtained...." In this case, plaintiff has offered to post a $900,000 bond which is double its alleged claim. However, the court finds that the posting of a $900,000 bond would be insufficient because the defendant may be forced to go out of business. Thus, $900,000 would not "pay to defendant all damages which defendant may sustain by reason of attachment if wrongfully obtained." K.S.A. 60–705. The court further finds that because plaintiff has failed to sustain its burden of proof on the properness of attachment as required by K.S.A. 60–712, the court will deny plaintiff's motion for an order of prejudgment attachment.

IT IS BY THE COURT THEREFORE ORDERED that Mid–States Ag–Chem Company, Inc.'s motion for a preliminary injunction and/or in the alternative for an order of attachment is denied.

**2.** Defendant has the express approval of two of its secured creditors. The conclusion that defendant is attempting to place its property beyond the reach of its creditors is simply unsupported by the evidence.